IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



METAPHYZIC EL-ECTROMAGNETIC
SUPREME-EL,

      Petitioner,

v.                              Civil Action No. **3:14CV52**

DIRECTOR, DEPARTMENT OF
CORRECTIONS,

      Respondent.

**REPORT AND RECOMMENDATION**

Metaphyzic El-Ectromagnetic Supreme-El, a Virginia inmate proceeding pro se, submitted a 28 U.S.C. § 2254 petition (hereinafter "§ 2254 Petition") (ECF No. 6) challenging his 2013 convictions in the Circuit Court of the City of Norfolk ("Circuit Court"). While Supreme-El lists seventeen claims for relief, the majority of his claims contest the Commonwealth of Virginia's and the Circuit Court's jurisdiction to prosecute and convict him because of his status as a "Moorish-American." Supreme-El's claims are as follows:[1]

Claim 1:      "AA222141-TRUTH A-1: Moorish American Credentials registered with the Department of Justice and Library of Congress." (§ 2254 Pet. 6.)

---

[1]    Supreme-El's use of capitalization defies any consistent method of correction. The Court corrects the capitalization and punctuation in Supreme-El's submissions when appropriate for clarity. The Court also adds underlining to citations to court cases. For some of Supreme-El's claims, the Court simply lists the document or treaty that Supreme-El asserts deprived the Circuit Court of jurisdiction.

Claim 2:       "Free Moorish-American Zodiac Constitution (Zodiac Constitution and Birthrights of the Moorish Americans)." (Id. at 7.)

Claim 3:       "Vienna Convention on Diplomatic Relations, 23 U.S.T. 3227; (April 18th, 1961) Articles 29, 30, 31." (Id. at 9.)

Claim 4:       "Convention on Privileges and Immunities of the United Nations, 21 U.S.T. 1418, Article 4, Section 11(a), (b)." (Id. at 11.)

Claim 5:       "Treaty of Peace and Friendship, of 1787 A.D., and 1836 A.D., Between Morocco and the United States." (Id. at 11-A.)

Claim 6:       "United States Constitution, Article 3 section 2; Article 6; Amendment 5 (Liberty Clause); Amendment 9 (Reservation of the Rights of People)." (Id. at 11-B.)

Claim 7:       "Title 18 U.S.C. Part 1, Chapter 7, Section 112 (1116(b)[)]; Protection of Foreign Officials, Official Guests, and Internationally Protected Persons." (Id. at 11-C.)

Claim 8:       "Rights of Indigenous Peoples, (E/CN.4/sub. 2/1994/2/Add.1 (1994) (Updated 2007)." (Id. at 11-D.)

Claim 9:       "Universal Declaration of Human Rights." (Id. at 11-E.)

Claim 10:      "Hagans v. Lavine, 415 U.S. 528 (1974). A lower court cannot decide a conflict between state and federal laws, in a proceeding." (Id. at 11-G.)

Claim 11:      "Dred Scott v. Sandford, 60 U.S. (19 Howard[)] 393 (1857). Held that Negroes—slave or free—were not included and were not intended to be included in the category of citizen." (Id. at 11-H.)

Claim 12:      "United States Supreme Court—Acts of State." (Id. at 11-I.)

Claim 13:       "22 U.S.C. 254A, 'Diplomatic Relations Act.'"
                (Id. at 11-I.)

Claim 14:       "Sundry Free Moors Act, 1790." (Id. at 11-J.)

Claim 15:       "26 U.S.C. 7701(A)(39) 'Persons Residing Outside
                the United States.'" (Id.)

Claim 16:       "Simmons v. Commonwealth, 89 Va. 156, 15 S.E. 386
                (1892)." (Id. at 11-K.)

Claim 17:       "Deprived of the right to a fair trial, 5th, 6th,
                9th Amendment Violation." (Id. at 11-M.)

Respondent has moved to dismiss the action (ECF No. 16). The
matter is before the Court for Report and Recommendation
pursuant to 28 U.S.C. § 636(b). For the reasons that follow, it
is RECOMMENDED that Respondent's Motion to Dismiss be GRANTED
and that the § 2254 Petition be DISMISSED.

## A.   Procedural History

After a bench trial, the Circuit Court convicted Supreme-El
of possession of a schedule I or II controlled substance,
possession of a firearm by a convicted felon, possession of a
firearm while committing possession of a schedule I or II
controlled substance, resisting arrest/intimidation, and
carrying a concealed weapon. Supreme-El was sentenced to twenty
years and twenty-four months of incarceration. Commonwealth v.
Supreme, Nos. CR12001251-00 through -04, at 1-2 (Va. Cir. Ct.
Feb. 28, 2013.) Supreme-El appealed, arguing, inter alia, that
"the trial court erred in denying his motion to dismiss because
the court lacked jurisdiction over the charges due to his

3

nationality, heritage, and immigration status." <u>Supreme v. Commonwealth</u>, No. 0141-13-1, at 1 (Va. Ct. App. Oct. 30, 2013.) The Court of Appeals of Virginia denied his appeal as frivolous. <u>Id.</u> at 1, 4.

During the pendency of his direct appeal, on August 13, 2013, Supreme-El filed a petition for writ of habeas corpus in the Supreme Court of Virginia raising similar claims challenging the jurisdiction of the Circuit Court. Petition for Writ of Habeas Corpus at 1, <u>Supreme-El v. Dir. of the Dep't of Corr.</u>, No. 131274 (Va. filed Aug. 13, 2013.)[2] The Supreme Court of Virginia found "that the claims attacking the petitioner's new convictions are frivolous" and dismissed the petition. <u>Supreme-El v. Dir. of the Dep't of Corr.</u>, No. 131274, at 1 (Va. Oct. 31, 2013).

**B. Analysis**

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus.

---

[2] Because Supreme-El's claims clearly lack merit, the Court assumes without deciding that Supreme-El raised the same claims in his state habeas petition as in his § 2254 Petition. Thus, the Court assumes his claims are exhausted for the purposes of federal habeas review.

Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." Gray v. Branker, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

### 1. State Law Error (Claim 16)

In Claim Sixteen, Supreme-El argues that in violation of "Simmons v. Commonwealth, 89 Va. 56, 15 S.E. 386 (1892) . . . the [Circuit Court] failed to enter the alleged indictments in the court['s] order book as defined in Va. Code 17.1-124." (§ 2254 Pet. 11-K.) The Circuit Court's alleged

error provides no basis for federal habeas corpus relief. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (citing cases for the proposition that "federal habeas corpus relief does not lie for errors of state law"). Accordingly, it is RECOMMENDED that Claim 16 be DISMISSED.

### 2. Moorish American Claims (Claims 1 through 15)

In his many claims, Supreme-El contends that the Commonwealth of Virginia lacked jurisdiction to prosecute him and the Circuit Court lacked jurisdiction to convict him because of his status as a Moorish American.[3] "'[I]t is well-recognized

_____

[3] The United States District Court for New Jersey aptly summarized the beliefs that underpin Supreme-El's claims:

> Two concepts, which may or may not operate as interrelated, color the issues at hand. One of these concepts underlies ethnic/religious identification movement of certain groups of individuals who refer to themselves as "Moors," while the other concept provides the basis for another movement of certain groups of individuals [Sovereign Citizens/Redemptionists], which frequently produces these individual's denouncement of United States citizenship, self-declaration of other, imaginary "citizenship" and accompanying self-declaration of equally imaginary "diplomatic immunity."
> . . . .
> It does not appear that one's Moorish ethnic roots (or Moorish religious convictions, or both) have any reason to go hand-in-hand with one's adhesion to the sovereign citizenship movement (or with one's

6

that . . . the Moorish American Nation . . . [is a] notorious organization[ ] of scofflaws and ne'er-do-wells who attempt to benefit from the protections of federal and state law while simultaneously proclaiming their independence from and total lack of responsibility under those same laws.'" Abdullah, 2012 WL 2916738, at *5 (first alteration in original) (quoting Murakush Caliphate, 790 F. Supp. 2d at 272). Summarized, Supreme-El claims entitlement to habeas relief because his conviction violates purported Moorish American laws and several treaties between the United States and the Moors (Claims 1, 2, 5, 14); because of his status as a diplomat, his conviction violates the Fifth, Sixth, and Ninth Amendments, United States statutes, and United Nations human rights resolutions (Claims 3,

---

professing the theory of redemptionism, or with one's practice of "paper terrorism," claims of selfgranted "diplomatic immunity," etc.) However, and unfortunately enough, certain groups of individuals began merging these concepts by building on their alleged ancestry in ancient Moors . . . for the purposes of committing criminal offenses and/or initiating frivolous legal actions on their self-granted "diplomatic immunity," which these individuals deduce either from their self-granted "Moorish citizenship" and from their correspondingly-produced homemade "Moorish" documents . . . or from a multitude of other, equally non-cognizable under the law, bases, which these individuals keep creating in order to support their allegations of "diplomatic immunity."

Abdullah v. New Jersey, No. 12-4202 (RBK), 2012 WL 2916738, at *2-3 (D.N.J. July 16, 2012) (quoting Murakush Caliphate of Amexem Inc. v. New Jersey, 790 F. Supp. 2d 241, 245 (D.N.J. 2011).

4, 6, 7, 8, 9, 13, and 15); and his conviction violates several Supreme Court cases (Claims 10, 11, and 12). Supreme-El's claims are conclusory and lack any clear argument demonstrating that the cited authority entitles him to federal habeas relief. See Sanders v. United States, 373 U.S. 1, 19 (1963) (finding denial of habeas action appropriate where it "stated only bald legal conclusions with no supporting factual allegations").

Moreover, as discussed below, Supreme-El fails to demonstrate that the cited statutes, cases, or treaties exempt him from the jurisdiction of the Virginia courts. Cf. Johnson-El v. The United States, No. 281-78, 1980 WL 99703, at *1 (Ct. Cl. July 18, 1980) (finding "Moorish-American Zodiac Great Seal Constitution; the Moroccan Treaty of 1787 . . . the United Nations Charter . . . Scott v. Sandford, 60 U.S. (19 Howard) 393 (1857) . . . articles I and III and the [F]ourteenth [A]mendment of the Constitution; and his claimed Cherokee Indian ancestry" failed to exempt the plaintiff from being subject to federal law).

The Court of Appeals of Virginia aptly summarized and rejected Supreme-El's claims:

> Appellant was convicted of [various offenses]. He argues that the trial court erred in denying his motion to dismiss [the charges against him] because the court lacked jurisdiction over the charges due to his nationality, heritage, and immigration status.[ ]
> "The term jurisdiction embraces several concepts including subject matter jurisdiction, which is the

authority granted through constitution or statute to adjudicate a class of cases or controversies; territorial jurisdiction, that is, authority over persons, things, or occurrences located in a defined geographic area . . . ." Morrison v. Bestler, 239 Va. 166, 169, 387 S.E.2d 753, 755 (1990).

> Code § 19.2-244 provides:
>> Except as otherwise provided by law, the prosecution of a criminal case shall be had in the county or city in which the offense was commited. . . .

> "On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). So viewed, the evidence proved that on February 15, 2012, a bail recovery agent found appellant in a public library located in Norfolk, Virginia. Officer Ortiz investigated and a physical struggle ensued. Appellant was arrested, and Ortiz recovered a firearm, a knife, and controlled substances from a pocket of appellant's jacket. Appellant moved to dismiss the charges because he is a member of the Moorish Science Temple and not subject to the jurisdiction of American courts.

> Appellant was arrested for the criminal offenses while in Norfolk, and the Circuit Court of the City of Norfolk had jurisdiction over the criminal charges. There is no exception for members of the Moorish Science Temple from the laws of the Commonwealth of Virginia. The trial court did not err in denying appellant's motion to dismiss.

Supreme, No. 1041-13-1, at 1-2 (first omission in original) (footnote omitted).

"First, to the extent that [Supreme-El] is asserting that state courts lack jurisdiction to prosecute Moorish-Americans, that argument has been repeatedly rejected." El v. Mayor of City of New York, No. 13-CV-4079 (SLT)(CLP), 2014 WL 4954476, at

*5 (E.D.N.Y. Sept. 30, 2014) (citation omitted); see Bond v. N.C. Dep't of Corr., No. 3:14-cv-379-FDW, 2014 WL 5509057, at *1 (W.D.N.C. Oct. 31, 2014) (explaining that "courts have repeatedly rejected arguments . . . by individuals who claim that they are not subject to the laws of the . . . individual States by virtue of their 'Moorish American' citizenship"). "Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' a 'secured-party creditor,' or a 'flesh-and-blood human being,' that person is not beyond the jurisdiction of the courts. These theories should be rejected summarily, however they are presented." United States v. Benabe, 654 F.3d 753, 767 (7th Cir. 2011); see United States v. White, 480 F. App'x 193, 194 (4th Cir. 2012) ("Neither the citizenship nor the heritage of a defendant constitutes a key ingredient to a . . . court's jurisdiction in criminal prosecutions . . . .").

Contrary to Supreme-El's assertion, his "'purported status as a Moorish-American citizen does not enable him to violate . . . state laws without consequence.'" El, 2014 WL 4954476, at *5 (omission in original) (citation omitted) (internal quotation marks omitted). Thus, "the argument that a person is entitled to ignore the laws of the [Commonwealth of Virginia] by claiming membership in the Moorish-American nation

is without merit . . . ." _Id._ (omission in original) (citation omitted) (internal quotation marks omitted).

In the first group of claims, Supreme-El cites to his status as a diplomat to support his argument that the Virginia courts lacked jurisdiction to criminally prosecute him. For example, Supreme-El explains that "Moorish Americans are a[n] internationally protected people possessing freehold by inheritance status" and that he "is a diplomat (Jurisconsultus) of the Autochthon Yamassee Native American Muurish Government." (§ 2254 Pet. 6.) In Claims 3 and 4, he cites the "Vienna Convention on Diplomatic Relations" and the "Convention on Privileges and Immunities of the United Nations" for the proposition that as a diplomat "he shall not be liable to any form of arrest or detention." (_Id._ at 9, 11.) In Claim 6, Supreme-El argues that the Circuit Court violated the Fifth and Ninth Amendments, as well as Articles 3 and 6, because it "lacked personal jurisdiction over the Petitioner as a jurisconsultus of a foreign nation, and also lacked jurisdiction over the subject matter . . . ." (_Id._ at 11-B.) In Claim 7, he cites "Title 18 U.S.C. Part 1, chapter 7, section 112 (1116(b)[)]" because "he is an internationally protected person." (_Id._ at 11-C.) In Claim 13, he contends that because he is a "member of the Autochthon Yamassee Native American Muurish Government" and a "Muurish Jurisconsultus," the state

11

courts violated "22 U.S.C. 254A 'Diplomatic Relations Act'" by prosecuting him. (Id. at 11-I.) Finally, in Claim 15, Supreme-El argues that he resides outside of the United States, thus, "26 U.S.C. 7701(A)(39)" provides him with immunity from prosecution. (Id. at 11-J.)

First, the record demonstrates that Supreme-El was born in Norfolk, Virginia; thus, he is a citizen of the United States. Psychological Evaluation at 2, Commonwealth v. Supreme, No. CR12001251-00 through -04 (Va. Cir. Ct. filed May 24, 2012). Supreme-El was arrested and convicted of crimes occurring in Norfolk, Virginia. Hence, to the extent he argues entitlement to diplomatic or consular immunity from criminal prosecution, Supreme-El fails to allege facts demonstrating that, as a United States citizen, he is a diplomat or that the laws he cites strip the Virginia courts of jurisdiction over him or his crimes. See Pitt-Bey v. District of Columbia, 942 A.2d 1132, 1135-36 (D.C. 2008). (rejecting notion that Moorish Americans "[are] diplomatic staff representative[s] of a sovereign nation"). Second, despite Supreme-El's belief that he has consular status as a Moorish American, "[t]he law is clear that Moorish Americans, like all citizens of the United States, are subject to the laws of the jurisdiction in which they reside." Jones-El v. South Carolina, No. 5:13-CV-01851, 2014 WL 958302, at *8 (D.S.C. March 11, 2014)(quoting Smith ex rel Bey v. Kelly, No.

12

12-CV-2319 (JS)(AKT), 2012 WL 1898944, at *2 (E.D.N.Y. May 24, 2012)); see United States v. James, 328 F.3d 953, 954 (7th Cir. 2003) ("Laws of the United States apply to all persons within its borders.")

Additionally, in Claims 8 and 9, Supreme-El argues that the Virginia courts violated "Article 39 of Rights of Indigenous Peoples," because "Moorish nationals operate through a fee simple absolute estate lien," (§ 2254 Pet. 11-D), and violated the "Universal Declaration of Human Rights" because "officers hindered Petitioner in his official duties" and "deprived the Petitioner of his nationality," through an arbitrary arrest and detention (id. at 11-E). Supreme-El fails to demonstrate that the "Rights of Indigenous Peoples" and "Universal Declaration of Human Rights" entitle him to federal habeas relief. See Bey v. Ohio, No. 1:11-CV-01048, 2011 WL 4007719, at *2 (N.D. Ohio Sept. 9, 2011) (explaining that the "'Universal Declaration of Humans Rights'" . . . and "'Rights of Indigenous Peoples 1994' . . . are not recognized by United States courts as legally binding").

Accordingly, it is RECOMMENDED that Claims 3, 4, 6, 7, 8, 9, 13, and 15 be DISMISSED.

Supreme-El also cites several "laws" and a treaty purportedly governing Moorish Americans citizens. In Claim 2, he alleges that he is "bound to the Zodiac Constitution." (§ 2254 Pet. 7.) In Claim 1, Supreme-El contends that his state

13

conviction should be vacated based on purported violations of the "AA-222141-TRUTH A-1: Moorish American Credentials," (id. at 6), and later describes this "as the Petitioner's freehold by inheritance status, AA222141 TRUTH A-1" (id. at 11-B). In Claims 5 and 14, Supreme-El cites the Treaty of Peace and Friendship (id. at 11-A), and the Sundry Free Moors Act (id. at 11-J), to demonstrate that the state courts lacked jurisdiction over his criminal prosecution.

Notwithstanding Supreme-El's personal subscription to the Zodiac Constitution and freehold "AA-222141-TRUTH A-1," and his belief that the Treaty of Peace and Friendship between Morocco and the United States and the Moors Sundry Act of 1790 deprive the state courts of jurisdiction over him, courts have soundly rejected these claims. First, Supreme-El fails to demonstrate that the Zodiac Constitution and freehold "AA-222141-TRUTH A-1" provide a basis for federal habeas review. See Headen-El v. Keller, No. 1:11CV590, 2011 WL 3568282, at *2 (M.D.N.C. Aug. 15, 2011) ("The fact that a group claiming to be 'Moorish Americans' has written documents that might support" the idea that the court lacks jurisdiction to prosecute and imprison them "does not establish a valid claim.") Further, the "Moroccan-American Treaty of Peace and Friendship, ratified by President Andrew Jackson on January 28, 1837 . . . . [, a]s its title indicates, . . . is [a treaty] of 'Peace and Friendship' between the

14

sovereign states of Morocco and the United States . . . . It does not contain language suggesting that the United States, or any state or territory therein, does not have jurisdiction over a person violating the law within its jurisdiction." Pitt-Bey, 942 A.2d at 1136 (providing background of the Moroccan-American Treaty of Peace and Friendship and explaining that "this treaty has no bearing on" jurisdiction); see, e.g., Wilkerson v. Godzan, No. 2:14cv731-MHT, 2014 WL 5112085, at *3 (M.D. Ala. Oct. 10, 2014) (explaining that "court[s] lack[ ] subject matter jurisdiction to enforce '[t]he Zodiac Constitution' or the 'Treaties of Peace and Friendship'"); Jones-El, 2014 WL 958302, at *8 (rejecting habeas claims under the Zodiac Constitution and Treaty of Peace and Friendship as "completely frivolous, whether raised under § 2254, § 2241, or by way of civil complaint"); El Ameen Bey v. Stumpf, 825 F. Supp. 2d 537, 558 (D.N.J. 2007) (holding Treaty of Peace and Friendship has no impact on jurisdiction of courts).

Finally, "the Moors Sundry Act of 1790 appears to be a South Carolina law granting special immunity from 'Black Codes' to South Carolina residents who were subjects of the Sultan of Morocco . . . ." Khepera-Bey v. Santander Consumer USA, Inc., No. WDQ-11-1269, 2012 WL 1965444, at *7 (D. Md. May 30, 2012). Because Supreme-El's § 2254 Petition concerns his Virginia conviction, the "South Carolina . . . statute is irrelevant."

15

Id. Supreme-El's claims lack merit. Accordingly, it is RECOMMENDED that Claims 1, 2, 5, and 14 be DISMISSED.

In Claims 10, 11, and 12, Supreme-El cites two Supreme Court cases and general "Supreme Court—Acts of State" (§ 2254 Pet. 11-I), for the proposition that the state courts lacked jurisdiction over him. Supreme-El fails to explain, and the Court fails to discern, how these cases entitle to him to federal habeas relief. See Sanders, 373 U.S. at 19 (finding denial of habeas action appropriate where it "stated only bald legal conclusions with no supporting factual allegations").

In Claim 10, Supreme-El cites Hagans v. Lavine, 415 U.S. 528 (1974) for the proposition that "[a] lower court cannot decide a conflict between state and federal laws, in a proceeding." (§ 2254 Pet. 11-G.) The Court fails to discern any conflict between state and federal laws in Supreme-El's § 2254 Petition. Next, in Claim 11, Supreme-El cites Scott v. Sandford, 60 U.S. 393 (1857), to assert that he is not a citizen of the United States because the case "[h]eld that Negroes—slave or free—were not included and were not intended to be included in the category of citizen." (§ 2254 Pet. at 11-H.) Contrary to Supreme-El's assertion, the ratification of the Fourteenth Amendment in 1868 overruled Scott and provides, in relevant part, that "[a]ll persons born or naturalized in the United States . . . are citizens of the United States and of the State

16

wherein they reside." U.S. Const. amend XIV. Finally, in Claim 12, Supreme-El cites general "United States Supreme Court - Acts of State" but fails to provide any cognizable legal argument for his claim. (§ 2254 Pet. 11-I.) Accordingly, it is RECOMMENDED that Claims 10, 11, and 12 be DISMISSED.

### 3. Constitutional Claim (Claim 17)

In Claim 17, Supreme-El argues that the Circuit Court "deprived [him] of the right to a fair trial, 5th,[4] 6th,[5] 9th[6] Amendment violation." (§ 2254 Pet. 11-M.) Supreme-El argues:

> Judge Everett A. Martin, Jr. showed bias and discrimination against the Petitioner's nationality, indigenous status, customs, and deprived the Petitioner of effective legal remedies to represent himself in propia persona sui juris (in one's proper person, as a matter of law, one's own right) in violation of the Virginia Canons of Judicial Conduct . . . ; The Rights of Indigenous Peoples, Article 39; The 5th, 6th, and 9th Amendments.
>
> The Petitioner was removed from the courtroom after speaking under a calm and intelligent tone, and tried in his absence.

---

[4] Because Supreme-El is a state prisoner, the Fifth Amendment applies through the Fourteenth Amendment to any due process claim. The Fourteenth Amendment states, in relevant part: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

[5] "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI.

[6] "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. Supreme-El fails to explain, and the Court fails to discern, how the Ninth Amendment entitles him to federal habeas relief.

(Id. at 11-M.)  First, to the extent Supreme-El alleges that the Circuit Court judge lacked jurisdiction to prosecute Supreme-El, such a claim lacks merit for the reasons previously stated. Moreover, any claim under Virginia judicial canons or Rights of Indigenous Peoples provides no cognizable basis for federal habeas review.  See Lewis, 497 U.S. at 780; Bey, 2011 WL 4007719, at *2.

The Court doubts Supreme-El actually raises a claim of constitutional dimension.  Nevertheless, the Court addresses his undeveloped claim that the Circuit Court violated his constitutional rights by removing him from the courtroom during his trial.

"The Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment together guarantee a defendant charged with a felony the right to be present at all critical stages of his trial."  United States v. Rolle, 204 F.3d 133, 136 (4th Cir. 2000).  Thus, a defendant has a constitutional right "to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings."  Id. (citing Faretta v. California, 422 U.S. 806, 819 n.15 (1975)).  Nevertheless, limitations exist on this right.  Bell v. Evatt, 72 F.3d 421, 432 (4th Cir. 1995).  A criminal defendant "may waive his right to be present either 'by consent or at times even by misconduct.'"  United States v.

_Benabe_, 654 F.3d 753, 768 (7th Cir. 2011) (quoting _Snyder v. Massachusetts_, 291 U.S. 97, 106 (1934)).

> "A defendant can lose his right to be present at trial if, after he has been warned by the trial judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom."

_Bell_, 72 F.3d at 432 (quoting _Illinois v. Allen_, 397 U.S. 337, 343 (1970)). However, "[a] defendant who has lost his right to be present can always regain it as soon as he 'is willing to comport himself consistently with the decorum and respect inherent in the concepts of courts and judicial proceedings.'" _Id._ at 769 (citing _Allen_, 397 U.S. at 343).

The record demonstrates "clear support for the [Circuit Court's] determination that, through [his] tandem campaign of obstreperous interruptions and frivolous legal arguments" Supreme-El waived his right to be present at trial. _Id._ at 769. On the day of trial, Supreme-El repeatedly espoused his Moorish American views in response to simple questions asked of him by the Circuit Court. The Court admonished Supreme-El that the Circuit Court had already handled those matters at a prior hearing and stated that "I'm not going to revisit that," (Nov. 14, 2012 Tr. 6), and warned that "[t]his is not the time for a speech." (Nov. 14, 2012 Tr. 11.) When the Circuit Court instructed Supreme-El to "have a seat, sir," three times, and

19

Supreme-El refused and continued arguing, (Nov. 14, 2012 Tr. 15-16), the Circuit Court warned Supreme-El to "[p]lease be quiet," and then gave him a "last warning." (Nov. 14, 2012 Tr. 16.) Supreme-El continued to argue, and the Circuit Court found Supreme-El in contempt and sentenced him to ten days in jail. (Nov. 14, 2012 Tr. 16.) Supreme-El refused to be quiet and the following exchange took place:

    THE COURT: Mr. Supreme-El, if you do not be quiet, you will be put in the lockup, and the trial will be conducted in your absence.
    THE DEFENDANT: I do not consent to an ex parte hearing.
    THE COURT: Well, then, please be quiet so we can proceed.
    THE DEFENDANT: Listen. The only way that you can proceed--
    THE COURT: Don't tell me to "listen," Mr. Supreme-El. Be quiet.
    THE DEFENDANT: You are superseding your authority --
    THE COURT: I understand you think that. Be quiet.
    THE DEFENDANT: You are binded by Article 6 --
    THE COURT: Take him to lockup. We'll conduct the trial with him in the lockup. I find the defendant will not stop talking.

(Nov. 14, 2012 Tr. 17.)

    The Circuit Court then removed Supreme-El from the courtroom but directed counsel to inquire of Supreme-El whether "he wishes to cease his speeches and wishes to sit here and listen to the evidence." (Nov. 14, 2012 Tr. 17-18.) The Circuit Court subsequently brought Supreme-El back into the courtroom and gave him many more chances to assure the Circuit Court that he would conduct himself appropriately. Supreme-El refused to stop interrupting and refused to promise to be quiet.

(Nov. 14, 2012 Tr. 18-23.) The Circuit Court directed that Supreme-El "be taken into the lockup," and then insured that the audio system worked in the lockup so Supreme-El could hear the testimony in the courtroom. (Nov. 14, 2012 Tr. 23.) The Circuit Court directed that counsel could discuss the case with his client after each witness testified. (Nov. 14, 2012 Tr. 24.)

Despite Supreme-El's contention that he "was removed from the courtroom after speaking under a calm and intelligent tone" (§ 2254 Pet. 11-M), his purported "intelligent tone" has no bearing on the inquiry. Instead, the Circuit Court appropriately removed Supreme-El from the courtroom. Supreme-El continuously interrupted the Circuit Court and refused to appropriately answer questions, despite repeated warnings by the Circuit Court regarding his behavior. See Bell, 72 F.3d at 432. When the Circuit Court warned Supreme-El that "he would be removed from the courtroom if he continued his antics, [Supreme-El] disregarded the trial judge and refused to remain quiet." Id. Thus, "[t]he trial judge responded to [Supreme-El's] refusal to curtail his antics in the only sensible manner, removal from the courtroom." Id. at n.11. Supreme-El fails to demonstrate that his removal from the courtroom violated his constitutional rights. Accordingly, it is RECOMMENDED that Claim 17 be DISMISSED.

## C.   Motion to Amend

On June 20, 2014, Supreme-El filed a Motion for Leave to File an Amended Petition (ECF No. 22), that had no accompanying amended petition, but instead, attempted to tack four new claims to his § 2254 Petition (ECF Nos. 22-1, 22-2, 22-3.)  Supreme-El's proposed new claims are as follows:

Claim 18:  "Rights of Indigenous Peoples Article 39 . . . Ineffective Assistance of Counsel."  (ECF No. 22-1, at 1.)

Claim 19:  "Brady v. Maryland, 373 U.S. 83, 87 (1963) Evidence was suppressed by the prosecution."  (ECF No. 22-2, at 1.)

Claim 20:  "Denial of self-representation."   (ECF No. 22-3, at 1.)

Claim 21:  "Lack of due process of law 5th Amendment."   (ECF No. 22-4, at 1.)

"Under Rule 15(a) leave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment."  United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000) (citations omitted).  As explained below, it is RECOMMENDED that the Motion to Amend be GRANTED.  However, it is also RECOMMENDED that Claims 18 through 21 be DISMISSED for lack of merit.

### 1.   Ineffective Assistance

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and, second, that the deficient

performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689).  The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice.  Id. at 697.

In Claim 18, Supreme-El claims that "counsel proved to be ineffective by not being competent to represent the Petitioner under the protection of international laws and his own Constitution (Free Moorish-Zodiac Constitution)" and for failing to advance Supreme-El's nonsensical arguments about the Circuit Court's lack of jurisdiction.  (ECF No. 22-1, at 1.)  Supreme-El fails to demonstrate any deficiency of counsel or resulting prejudice.  Counsel wisely eschewed making the frivolous

arguments Supreme-El advances.    Accordingly, it is RECOMMENDED
that Claim 18 be DISMISSED.

### 2.    Alleged **Brady** Claim

In Claim 19, Supreme-El suggests that the Commonwealth
suppressed evidence "favorable to the Petitioner" in violation
of Brady v. Maryland, 373 U.S. 83, 87 (1963).  (ECF No. 22-2, at
1.)  Brady and its progeny "require[ ] a court to vacate a
conviction and order a new trial if it finds that the
prosecution suppressed materially exculpatory evidence."  United
States v. King, 628 F.3d 693, 701 (4th Cir. 2011).  Accordingly,
in order to obtain relief under Brady, a litigant must "(1)
identify the existence of evidence favorable to the accused; (2)
show that the government suppressed the evidence; and (3)
demonstrate that the suppression was material."  Id. (citing
Monroe v. Angelone, 323 F.3d 286, 299 (4th Cir. 2003)).

Supreme-El fails to demonstrate that the Commonwealth
suppressed material evidence.  Instead, Supreme-El suggests that
the Commonwealth suppressed "documents [that] confirmed that the
Petitioner is a Diplomatic Agent of the Autochthon Yamassee
Native American Muurish Government . . . ."  (ECF No. 22-2, at
1.)  As previously discussed, Supreme-El fails to demonstrate
entitlement to diplomatic immunity based on his Moorish American
status.    Thus, the documents he alleges that the Commonwealth
suppressed had no bearing on his criminal prosecution, and no

24

<u>Brady</u> violation occurred.  Accordingly, it is RECOMMENDED that Claim 19 be DISMISSED.

### 3.  Denial of Self-Representation

In Claim 20, Supreme-El argues that the Circuit Court denied him his right to self-representation although he waived the right to counsel.  (ECF No. 22-3, at 1.)  Supreme-El states: "The Petitioner timely, knowingly and intelligently signed a detailed form, 6-months before trial, waiving his right to a lawyer, the form was signed before several hearings took place." (<u>Id.</u>)  Supreme-El contends that the "UCC" form he signed, "reserve[d] his right and to not be liable for anything unknown in signing thereof.  The denial of this right constitutes a structural defect."  (<u>Id.</u>)  First, the Court fails to discern how a "UCC" document waived his right to counsel.  Supreme-El also advances no argument demonstrating that the Circuit Court appointed counsel over his objection or that a constitutional violation occurred.  Nevertheless, Supreme-El's claim lacks merit as the record demonstrates Supreme-El's clear inability to represent himself during the criminal trial.

Although a criminal defendant generally has the right to waive his constitutional right to counsel and defend himself <u>pro se</u>, a defendant's "right to self-representation is not absolute."  <u>United States v. Frazier-El</u>, 204 F.3d 553, 559 (4th Cir. 2000) (citation omitted).  Rather, a "trial judge may

25

terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct" because the "right of self-representation is not a license to abuse the dignity of the courtroom." Faretta v. California, 422 U.S. 806, 834 n.46 (1975); see Martinez v. Court of Appeal of California, Fourth Appellate Dist., 528 U.S. 152, 162 (2000) (explaining that a trial judge may "terminate self-representation . . . even over the defendant's objection-if necessary" and that "the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer"); see also Frazier-El, 204 F.3d at 559 (holding that when a defendant "manipulate[s] the mutual exclusivity of the rights to counsel and self-representation" the court "must ascribe a 'constitutional primacy' to the right to counsel because this right serves both the individual and collective good, as opposed to only the individual interests served by protecting the right of self-representation" (quoting United States v. Singleton, 107 F.3d 1091, 1102 (4th Cir. 1997))).

As detailed previously, prior to trial, Supreme-El repeatedly refused to comply with the Court's directives or appropriately answer the Court's questions. Supreme-El's obstreperous attempts to pursue the frivolous defense that the Circuit Court lacked jurisdiction to try or convict him,

rendered him unable to adequately represent himself or present the best possible defense. *See* United States v. Brunson, 482 F. App'x 811, 818 (4th Cir. 2012) (finding that "the district court had sufficient grounds to revoke [defendants'] pro se status and appoint full-time counsel" based on their ongoing "disruptive and obstructive conduct," including repeated assertions "that the district court did not have jurisdiction"); Frazer-El, 204 F.3d at 559-60 (finding no constitutional violation of self-representation when Moorish American defendant insisted upon making "meritless and irrelevant" arguments that "he was not subject to the jurisdiction of a . . . court"). Additionally, Supreme-El's instant "assertion of his right to proceed without counsel . . . suggest[s] more a manipulation of the system than an unequivocal desire to invoke his right of self-representation." Id. at 560. In light of Supreme-El's conduct prior to trial, the Circuit Court appropriately refused to allow him to proceed pro se. Thus, Claim 20 lacks merit. Accordingly, it is RECOMMENDED that Claim 20 be DISMISSED.

## 4. Due Process Violation

In Claim 21, Supreme-El claims that his "due process rights [were] violated by the Norfolk Police Department['s]" failure to "contact the Department of State, after Minister/Jurisconsultus, Supreme-El presented foreign public documents, notifying them of his diplomatic status." (ECF No. 22-4, 1.) Because Supreme-El

fails to establish any entitlement to diplomatic status, he demonstrates no due process error by the arresting officers. Claim 21 lacks merit, and it is RECOMMENDED that it be DISMISSED.

**D.    Conclusion**

Accordingly, it is RECOMMENDED that the Court DENY Supreme-El's 28 U.S.C. § 2254 Petition.

Supreme-El is advised that he may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Such objections should be numbered and identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. See Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation may result in the dismissal of his claims, and it may also preclude further review or appeal from such judgment. See Carr v. Hutto, 737 F.2d 433, 434 (4th Cir. 1984).

The Clerk is DIRECTED to send a copy of this Report and Recommendation to Supreme-El.

                                    /s/
                              Roderick C. Young
                              United States Magistrate Judge

Richmond, Virginia
Date: DEC - 1 2014